554

483 A.2d 876

**COMMONWEALTH of Pennsylvania**

v.

**Frank LONG, Appellant.**

Superior Court of Pennsylvania.

Argued May 2, 1984.

Filed Oct. 26, 1984.

Catherine A. Porter, Doylestown, for appellant.

Michael S. Goodwin, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before SPAETH, President Judge, and BROSKY and BECK, JJ.

BROSKY, Judge:

Three issues are raised in this appeal but essentially the question before us is whether the trial court erred in prohibiting appellant's counsel from eliciting from a Commonwealth witness that the witness was, at the time of trial, incarcerated.[1]  We reverse.

Frank Long took this appeal following his conviction by a jury on charges of recklessly endangering another person [2] and possession of an instrument of crime.[3]  Appellant was sentenced to a term of imprisonment of six to twenty-three months.  The charges filed against him arose out of an incident that occurred on October 15, 1981.  A Commonwealth witness, James Baxter, testified that on that date he lived in the home of Morris Carter; that he was in the house, to which he had returned after an altercation with appellant; and that approximately 3:00 a.m. appellant drove to the house, shouted threats at Mr. Baxter and fired a gun shot at him which struck the storm door.  Mr. Baxter, who said that he had gone out on the porch of the house before the shot was fired, testified that appellant drove away after firing the gun.

On cross-examination appellant's trial counsel sought to elicit from Mr. Baxter that he was, at the time of trial, incarcerated in the Bucks County Prison.  He argues that he might have been able to show bias on the part of the

---

1. Specifically appellant poses the following questions:
    (a) Did the lower court err by denying defense counsel the right to cross-examine James Baxter regarding his residence?
    (b) Did the lower court err by instructing the jury to ignore the defense counsel's question regarding said residence?
    (c) Did the lower court err by refusing appellant's requested point for charge regarding Mr. Baxter's incarceration?

2. 18 Pa.C.S. § 2705.
3. 18 Pa.C.S. § 907.

witness because of his incarceration. The following exchange took place:

BY MR. GRAHAM:

Q. Mr. Baxter, if I'm not mistaken, you said your current address is 211 Buckley Street?

A. Yes.

Q. I thought your current address was Bucks County Prison. Is that your current address?

A. Right now at this moment it is.

Q. You live at Bucks County Prison, not 211 Buckley Street?

MR. WILLIAMS: Your Honor, I object to this entire line of questioning.

THE COURT: Objection sustained.

May I see counsel at side bar, please?

(Side bar discussion out of hearing of the court reporter.)

-----

THE COURT: Take the jury out, please.

(Jury leaves courtroom.)

-----

THE COURT: Mr. Graham, are you prepared to present evidence to show that he is now in the Bucks County Prison serving a sentence for the purpose of going to the question of his credibility based upon his prior conviction of record?

MR. GRAHAM: No, Your Honor.

THE COURT: You are not?

MR. GRAHAM: No, I'm not. My point was, he announced his address as 211 Buckley Street. That is not the case.

I believe that—without going into the case, Your Honor, I believe that is relevent [sic] in that he—first of all, he testified that his address is 211 Buckley Street, which it isn't. And I would submit that—

THE COURT: It isn't because he's now in prison, do you mean?

MR. GRAHAM: Yes. But I also have—I have information to indicate that he wished to withdraw the charge in this case, that he had no intention to prosecute this case but for—

THE COURT: Go ahead.

MR. GRAHAM: But for the fact he was arrested and incarcerated he would not even be here today. I think this is relevant, the fact that he is in custody.

THE COURT: Mr. Graham, that is about as outrageous a representation as I've heard in this courtroom in a very long time. I presume from what you have said he is in the prison because he has been arrested for something. Obviously, he has not been tried for it. The mere fact that he is in prison because he cannot make bail does not affect what his residence is. His residence is 211 Buckley Street and in any event perhaps his residence at this moment is totally irrelevent [sic]. The question is when and where anything happened with regard to him; and according to his testimony that was at 211 Buckley Street.

The obvious purpose of this question is to import [sic] something to the jury with regard to this witness in the nature of some kind of hidden persuader which you know full well you can't ligitimately [sic] argue to them, but notwithstanding that, attempting to get such information to them they may not consider and which is irrelevant. That skates very close to the edge of ethical conduct on the part of an attorney. In fact, maybe it falls over the edge. Maybe the disciplinary board will have something to say about it when the trial is over.

Bring the jury back in.

MR. WILLIAMS: Your Honor, I would request some type of instruction. I don't know what else to do.

THE COURT: There isn't much else you can do. I have some trouble with that kind of tactics.

(Jury returns to courtroom.)

THE COURT: Members of the jury, you heard some reference in the few questions asked by defense counsel of this witness to the fact that he is or may be presently a resident of some kind in the Bucks County Prison. I instruct you, members of the jury, that that fact is totally irrelevant to this case for any and all purposes, at least on the basis of the present record. It is totally irrelevant and has no meaning whatsoever with regard to the matter of this witness' credibility, that means his believability.

The reason why he is or may be in the Bucks County Prison at this time has nothing to do with this case and is of no interest to us whatsoever at this time, and is to be totally disregarded by you in your deliberations on this case.

Now, go ahead, Mr. Graham.

Appellant contends that the trial court erred in prohibiting his attorney from asking Mr. Baxter his address.

█ It is generally the rule that although the fact that a witness has been convicted of a crime in the nature of crimen falsi may be brought out as bearing on his credibility, there must be a conviction before such evidence is relevant, because there is a vast difference between a conviction and a mere accusation. *Commonwealth v. Ross*, 434 Pa. 167, 252 A.2d 661 (1969). In *Ross* our Supreme Court explained that an exception to the general rule exists insofar as the courts have held that if a witness is under indictment for the same crime, or a crime growing out of it, or a crime closely related to the very offense for which the defendant is being tried, so as to form part of the same occurrence, then evidence of this indictment is relevant as bearing on the witness' interest in the immediate matter. *Ross, supra* 434 Pa. at 169–171, 252 A.2d at 662–663. The *Ross* court declined to expand the rule to permit evidence merely of arrest.

In *Commonwealth v. Warren*, 250 Pa.Super. 522, 378 A.2d 1271 (1977) the appellant had tried to cross-examine the prosecutrix in a rape case about her arrest on the day before trial in order to show possible bias because she might have been promised leniency in return for her testimony. While we affirmed the trial court's prohibition of the cross-examination we did say that we could envision in another case finding an exception to the *Ross* requirements that the witness has been indicted and that the indictment be for the same crime (or related) as that for which the defendant was being tried. We explained that it seems that the requirement that the witness and the defendant be charged with the same crime stems from the desire to ensure that the prosecutor was able to promise leniency (thereby indicating bias on the part of the witness).

In *Warren*, the prosecutrix was not arrested for a crime associated with the incident involving the defendant and we concluded that the cross-examination would indeed have been improper since appellant's counsel made no showing that the prosecutor was in a position to offer the witness leniency.

In *Commonwealth v. Joines*, 264 Pa.Super. 281, 283, 399 A.2d 776, 778 (1979) we cited *Warren, supra* as having recognized that the *Ross* exception has only two requirements: the existence of an indictment against the witness; and evidence that the prosecution was able to promise the witness leniency on the charges against him. We found that the witness, who was not a co-defendant of the appellant, had been given leniency and we reversed the decision of the trial court which had prohibited cross-examination of the witness as to a guilty plea which had been withdrawn so that the witness could participate in an ARD program.

It seems that this court has expanded the *Ross* exception to include instances in which a witness has been indicted for a crime unrelated to that for which the defendant is being tried. However, despite *dictum* which suggests a further broadening to include instances in which a witness has not yet been indicted in *Warren, supra* 250 Pa.Super. at 528,

378 A.2d at 1274, the Court has not yet held that a mere arrest justifies cross-examination of a witness in order to show bias.

The United States Supreme Court, however, in *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931) found that a federal trial court had erred in prohibiting defendant's counsel from asking a witness his address. As in the present case, counsel wished to elicit from the witness that he was incarcerated in order to show bias towards the Prosecutor. As in this case the witness was under arrest, but not convicted and the trial court said that counsel could not elicit testimony that he was merely detained. There is no indication in the opinion that the defendant in *Alford* had been indicted for a crime; rather, counsel wished to show that he was being detained by Federal authorities. As in the present case, the crime for which the witness was being detained was not related to that for which the defendant was being tried. In fact, the colloquy between defense counsel and the trial court in *Alford* was much like that which took place in the present case and as in this case it contains no offer of proof that the prosecutor had offered leniency to the witness.[4] Trial coun-

4. The relevant portions of the trial transcript in *Alford, supra* follow:
   Q. Where do you live, Mr. Bradley?
   MR. ARMSTRONG: That is objected to as immaterial and not proper cross-examination.
   THE COURT: I cannot see the materiality.
   MR. FRIEDMAN: Why, I think the jury has a perfect right to know who the witness is, where he lives and what his business is, and we have the right to elicit that on cross-examination. I may say that this is the first witness the Government had called that they have not elicited the address from.
   THE COURT: I will sustain the objection.
   Q. BY MR. FRIEDMAN: What is your business, Mr. Bradley?
   A. My profession is an accountant, public accountant.
   Q. What is your occupation now?
   A. I am not doing anything at the present time on account of this case.
   Q. On account of this case?
   A. Yes.
   Q. Do you live in Los Angeles?
   MR. ARMSTRONG: That is objected to as immaterial and invading the Court's ruling.
   THE COURT: I have ruled on that question.
   MR. FRIEDMAN: I will temporarily pass on to something else. I would like leave to submit authorities on my right to develop that on cross-examination. I haven't them with me.

sel explained that he had been informed that the witness was then in the custody of the federal authorities and that such fact might be brought out on cross-examination "for the purpose of showing whatever bias or prejudice he might have." The Supreme Court said that the purpose of the proposed question, "[w]as not, as the trial court seemed to think, to discredit the witness by showing that he was charged with crime, but to show by such facts as proper cross-examination might develop, that his testimony was biased because given under promise or expectation of immunity, or under the coercive effect of his detention by officers of the United States, which was conducting the present prosecution." *Id* at 693, 51 S.Ct. at 220.

Under these circumstances the Supreme Court nonetheless held that the question "Where do you live?" was appropriate not only to identify the witness with his environment, but also to show by cross-examination that his

THE COURT: All right. * * *

The jury were thereupon excused by the court until 9:30 o'clock on the morning of July 24, 1929, whereupon the jury retired after which the following proceedings were had relative to the materiality of the testimony, as to the residence and place thereof of Cameron Bradley.

THE COURT: So ordered. In what particular do you think that evidence is material?

MR. FRIEDMAN: I think it is material for this purpose, first, not only on the general grounds I urged in asking the question, but on the additional grounds that I have been informed and caused to believe that this witness himself is now in the custody of the Federal authorities.

MR. ARMSTRONG: You mean Mr. Bradley? You mean by the Federal authorities here?

MR. FRIEDMAN: I don't know by what authorities, but that is my impression, that he is here in the custody of the Federal authorities. If that is so, I have a right to show that for the purpose of showing whatever bias or prejudice he may have.

THE COURT: No; I don't think so. If you can prove he has ever been convicted of a felony, that is a different thing.

MR. FRIEDMAN: I realize that is the rule. I may impeach him if he has been convicted of a felony.

THE COURT: No. You may prove that fact as going to his credibility, but you can't merely show that he is detained or in charge of somebody. Everybody is presumed to be innocent until proven guilty.

MR. FRIEDMAN: It is a violent presumption sometimes, I know.

THE COURT: Your defendant is certainly to be given the benefit of that presumption.

MR. FRIEDMAN: I have no doubt of that.

THE COURT: If that is all you have, I will have to stand on the ruling. * * *

MR. FRIEDMAN: I would like, if the Court please, our exception noted to the Court's ruling made yesterday after the jury retired to the effect that we could not inquire as to the present address and residence of the witness.

THE COURT: Very well.

*Alford, supra* 282 U.S. at 689, n. 1; 51 S.Ct. at 218–219, n. 1.

testimony was affected by fear or favor growing out of his detention.

While the appeal in *Alford, supra* was from a Federal conviction, we believe its holding as to the permissible limits of cross-examination governs this case. See *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 111, n. 6, 39 L.Ed.2d 347 (1974) in which the Supreme Court held that the right of confrontation guaranteed by the Sixth Amendment is paramount to a state's policy of protecting a juvenile offender by prohibiting cross-examination of him about his status as a probationer. The Court discussed the *Alford* case and noted that its holding is applicable to state as well as federal trials. As the court wrote, "Although *Alford* involved a federal criminal trial and we reversed because of abuse of discretion and prejudicial error, the constitutional dimension of our holding in *Alford* is not in doubt." *Davis* 415 U.S. at 318, n. 6, 94 S.Ct. at 1111, n. 6.

■ Although we recognize that the absence of an indictment in this case distinguishes it from *Ross* and *Joines* and that the absence of evidence of leniency distinguishes it from *Joines* we nonetheless conclude that the United States Supreme Court decision in *Alford* compels the decision we reach. The trial court erred in prohibiting the cross-examination of Mr. Baxter as to his address.

Judgment of sentence reversed and case remanded for new trial. Jurisdiction is relinquished.